# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**KATHLEEN A. McCARTHY,**

      **Plaintiff,**

-v-

**AMERITECH PUBLISHING, INC.,**
**et al.,**

      **Defendants.**

**Case No. 3:10-cv-319**

**Judge Thomas M. Rose**

---

### ENTRY AND ORDER GRANTING IN PART AND OVERRULING IN PART McCARTHY'S MOTION FOR SANCTIONS (Doc. #38)

---

Now before the Court is Plaintiff Kathleen A. McCarthy's ("McCarthy's") Motion for Sanctions. (Doc. #38.) This Motion is now fully briefed and ripe for decision.

McCarthy moves the Court for sanctions pursuant to Fed. R. Civ. P. 37(c)(2). She asserts that she is entitled to sanctions because the Defendants Ameritech Publishing, Inc. and AT&T, Inc. (hereinafter the "Defendants") have failed to admit six statements presented as Requests for Admissions which were subsequently proven to be true. The Defendants respond that this Motion should be denied for reasons more fully explored below.

### RELEVANT LEGAL PROVISIONS

Rule 37(c)(2) provides for sanctions for failure to admit. Specifically:

If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The Court must so order unless:

      (A) the request was held objectionable under Rule 36(a);
      (B) the admission sought was of no substantial importance;
      (C) the party failing to admit had a reasonable ground to believe that it

might prevail on the matter, or

(D) there was other good reason for the failure to admit.

## ANALYSIS

McCarthy asserts that the Defendants have failed to admit six statements which were subsequently proven to be true. Each statement will be examined seriatim.

**Request To Admit No. 2 (Revised)[1]: Admit that employees in the Dayton, Ohio office were informed that three employees classified as Staff Associate III would be reduced as part of the Midwest Force Disposition in 2008**

**Response to Request To Admit No. 2 (Revised): Deny**

When asked at deposition if "bargained" employees in the Dayton, Ohio office were informed that three employees classified as Staff Associates IIIs would be reduced as part of the Midwest Force Disposition in 2008, David Evans responded, "I believe so." (Deposition of David Evans ("Evans Dep.") 145 Dec. 13, 2011.) David Evans was the General Manager of the Dayton, Office for AT&T's Sales work group. (Id. at 7-8.) McCarthy was in the Publishing group. (Id. at 17.)

In response to McCarthy's original Request To Admit No. 2, the Defendants admitted that employees in the Publishing work group in their Dayton, Ohio office were informed that two Staff Associate III positions from that work group would be reduced. Defendants further admitted that employees in their Sales work group in their Dayton, Ohio office were informed that one Staff Associate III position from that work group would be reduced.

_____

[1]McCarthy served her first set of Requests for Admissions on December 20, 2010 and her second set of Requests for Admissions were served on April 27, 2011. The Defendants initially failed to admit or deny certain Requests for Admissions. Following a hearing on McCarthy's Motion To Compel, the Defendants were ordered to admit or deny those requests. (Doc. #31.) Those specific requests were repeated in McCarthy's Revised Discovery Requests, to which the Defendants responded on November 28, 2011.

AT&T had two separate functions in the Dayton, Ohio office, the "publishing side" and the "sales side." (Id. at 14.) Both "sides" had Staff Associate III positions. (Id. at 13-14.) Evans testified that he just received notice for the "Sales side" and that he later found out through Publishing that they were having a reduction. (Id. 18.)

Gary Winkler ("Winkler") was designated to testify on Defendants' behalf as to the procedure used to determine which Ameritech employees in the Dayton, Ohio office would be surplused as part of the 2008 Midwest Force Disposition and the force adjustment surplus in 2009. (Deposition of Gary Winkler ("Winkler Dep.") 4 May 3, 2012.) Winkler testified that the identification of the Staff Associate III positions to be surplused in the Dayton, Ohio office was communicated to the respective group managers through two separate management chains of command. (Id. at 26-27.) He also testified that Evans' role in the 2008 surplus, as Manager of the Sales side, was "[o]nly to communicate that there would be a surplus of one crew clerk position in the Dayton office." (Id. at 29.) McCarthy herself testified that she was called into a room by David Zawisa, Manager of Publishing, with only Publishing group employees and told that two people would be let go as a result of the 2008 reduction. (Deposition of Kathleen A. McCarthy ("McCarthy Dep.") 17 Dec. 13, 2011.)

In her Response, McCarthy refers to Defendants' response to Question 2. However, this is a response to an interrogatory and not a request for admission. Thus, it will not be considered herein.

The total number of positions surplused in the Dayton, Ohio office does not appear to be of substantial importance. There were at least two groups located in the Dayton, Ohio office, the Sales group and the Publishing group. The reduction affected the two groups differently.

Defendants have admitted that two Staff Associate III positions from the Publishing group and one Staff Associate III position from the Sales group would be surplused. Whether there was a total of three or some other number from the Dayton, Ohio location surplused does not appear to be of consequence and McCarthy has not shown otherwise.

McCarthy argues that this issue is of consequence because Ameritech elected to treat Staff Associate IIIs as a combined group for some purposes but not for others. How Ameritech elected to treat Staff Associate IIIs is not a matter relevant to this Motion. The Defendants will not be sanctioned for their response to Request To Admit No. 2 (Revised).

> **Request To Admit No. 5 (Revised): Admit that the Plaintiff was informed in August, 2008, that she was eligible to receive retirement health insurance benefits at that time.**

> **Response To Admit No. 5 (Revised): Defendants have made a reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny these allegations.**

When asked if he was aware that McCarthy was informed in August of 2008 that she was eligible to receive retirement health insurance benefits at that time, Evans replied, "I was aware that AT&T's vendor had shared information with her, yes." (Evans Dep. at 143.) This statement forms the basis for McCarthy's argument that the Defendants should be sanctioned for failing to admit to Revised Request To Admit No. 5.

The Defendants initially responded to this Request To Admit by denying that McCarthy was informed in August 2008 that she was eligible to receive retirement health insurance benefits at that time. The initial response was provided on January 27, 2011 and the response to the revised request to admit was submitted on November 28, 2011.

The Defendants now argue that the Request To Admit was served on Ameritech

Publishing, Inc. ("API") who was neither the administrator nor one of the entities responsible for pension or health and welfare benefits, and API made a reasonable inquiry and could not admit or deny what McCarthy was told by unnamed others. The Defendants also argue that Evans was not McCarthy's supervisor, was not in her chain of command and was not personally involved in any of the efforts to determine McCarthy's eligibility status and that he testified based upon what he overheard.

Evans did not testify that he was on any phone calls made in the summer of 2008 to verify McCarthy's status. (Evans Dep. 34, 47.) Further, he did not engage in any efforts to try to determine McCarthy's eligibility for retirement in August of 2008. (Id.) Finally, Evans testified that the only documentation he had ever seen related to McCarthy's eligibility were some emails. (Id.)

Thus, what Evans may have known first-hand specifically regarding McCarthy's eligibility for retirement health insurance benefits is questionable at best. Also, it is unclear whether the conversation that Evans and McCarthy were a part of was with the retirement administrator or the health benefits administrator.

The Defendants have now admitted that, had McCarthy retired in August of 2008, she would have been eligible for post-employment retiree medical benefits. (Mot. S. J., doc # 44, pp. 16-17.) Thus, the issue is whether the information that the Defendants knew or could readily obtain when they responded to Request To Admit No. 5(Revised) on November 29, 2011, was insufficient for them to be able to admit or deny the Request To Admit at that time. More specifically, were the Defendants, on or before November 29, 2011, able to verify that McCarthy was informed by someone that she was eligible to receive retirement health insurance benefits in

August of 2008.

David Zawisa, Manager of Publishing, testified that he was involved in discussions, presumably, in or about August of 2008, regarding whether McCarthy was eligible to retire with medical benefits in August of 2008. (Deposition of David Zawisa ("Zawisa Dep.") 9, 42 May 23, 2012.) Zawisa's boss, Bruce Piombo, told Zawisa that McCarthy was not eligible to retire with medical benefits. (Id. at 43.) Yet, Zawisa was on a telephone call with Fidelity, the pension vendor, when McCarthy was told that she could retire with full benefits in August of 2008. (Id. at 43.)

It is not clear what Fidelity, who was responsible for retirement benefits decisions and not for medical benefit decisions, told McCarthy regarding post-employment medical benefits. Also, it is not clear when Defendants reached the conclusion that McCarthy would have been eligible for post-retirement medical benefits. The record indicates confusion between retirement benefits and post-retirement medical benefits. While there is evidence that McCarthy was told she was not eligible for retirement benefits, it is not clear that McCarthy was told in August of 2008 that she was eligible to receive retirement health insurance benefits.

Thus, McCarthy has not shown that the Defendants knew that she was informed in August of 2008 that she was eligible for retirement health insurance benefits. Therefore, the Court will not award sanctions for Defendants' failure to admit to Request To Admit No. 5 (Revised). The Court need not and does not address whether Defendants' Response to Request To Admit No. 5 (Revised) is of substantial import.

**Request To Admit No. 10: Admit that the Plaintiff would have been eligible to receive retirement health benefits if her employment had terminated in August, 2008.**

-6-

**Response To Request To Admit No. 10**: Deny

McCarthy identifies two bases for her argument that the Defendants should be sanctioned for failing to admit to Request To Admit No. 5. First, on May 10, 2012, counsel for the Defendants acknowledged that McCarthy was entitled to receive post-retirement medical benefits as of August 15, 2008. (Affidavit of Karen T. Dunlevey ("Dunlevey Aff.") ¶ 9 May 14, 2012.) This was confirmed by deposition testimony by the Defendants' Rule 30(b)(6) corporate designee, LaRhonda Duncan, on May 11, 2012. (Id. at ¶ 10.) Second, on May 10, 2012, counsel for the Defendants produced an email which corroborated that Dwight Cameron was specifically told on August 19, 2008 by a Senior Manager who had been asked to research the issue that McCarthy was eligible. (Id. ¶ 14.) This email was sent on August 19, 2008.

Request To Admit No. 10 was denied on January 27, 2011. At that time, the Defendants were aware that McCarthy had been informed by Dwight Cameron and Bruce Piombo, Zawisa's boss, that McCarthy could retire with retiree medical benefits. On February 7, 2012, Sharon McGhee from the health and welfare vendor, affirmed that McCarthy was not eligible for retirement benefits in August of 2008. (Affidavit of Sharon McGhee ("McGhee Aff.") Feb. 7, 2012.

The Defendants argue that there is not evidentiary support for McCarthy's assertion regarding Request To Admit No. 10. They also argue that three Rule 37(c)(2) exceptions apply. First, they had reasonable grounds to believe that they might prevail on the matter. Second, Request To Admit No. 10 is not of substantial import. Third, there was good reason for their failure to admit.

McCarthy has evidentiary support for her argument that she would have been eligible to receive retirement health benefits if her employment had terminated in August of 2008. Specifically, she has identified evidence that Dwight Cameron knew on August 19, 2008, that she was eligible for retirement health benefits if her employment ended in August of 2008. The Defendants denied the Request To Admit on January 27, 2011.

Thus, McCarthy's argument regarding this issue does not fail due to a lack of evidentiary support. The Court must next consider whether one of the exceptions to Rule 37(c)(2) applies.

The first exception argued by the Defendants is that the admission sought is of no substantial importance. McCarthy presents no argument regarding the importance of this Request To Admit. The Defendants argue that whether McCarthy was eligible in August of 2008 to receive retirement health benefits if her employment had terminated then is irrelevant to all McCarthy's claims. However, McCarthy has recently been given permission to file a Second Amended Complaint and the Court is unable to determine at this time if this Request To Admit is of substantial importance to any of the Claims in the Second Amended Complaint.

The second exception argued by the Defendants is that they had reasonable grounds to believe that they might prevail on the issue of whether McCarthy would have been eligible to receive retirement health benefits if her employment had terminated in August, 2008. This argument is based upon emails attached to Defendants' Memorandum In Opposition. (Doc. #55, Ex. J.)

Exhibit J is a series of emails, all dated in August of 2008. The only reference in any of the emails to retirement health benefits is a statement that McCarthy added to her Employment Opportunity Agreement that "I've been told by at least seven retirement specialists that I can

-8-

retire with by benefits excluding vision & my husband's life insurance policy." Although the emails discuss McCarthy's eligibility for pension benefits, none of them would give Defendants reason to question whether McCarthy would have been eligible to receive retirement health benefits if her employment had terminated in August, 2008. Thus, the Defendants have not shown that they had reasonable grounds to believe that they might prevail on the issue of whether McCarthy would have been eligible to receive retirement health benefits if her employment had terminated in August, 2008.

The third and final exception argued by the Defendants is that they had good reason to fail to admit. They argue that they denied Request To Admit No. 10 in good faith as is demonstrated by their willingness to provide a descriptive "initial response." However, they have identified no "initial response" and the Court is aware of none. Thus, the Defendants have not shown that they had good reason to fail to admit to Request To Admit No. 10.

There is evidence that McCarthy would have been eligible to receive retirement health benefits if her employment had terminated in August, 2008. Further, the Defendants failed to admit to this on January 27, 2011, and none of the exceptions to Rule 37(c)(2) apply. Thus, the Defendants are sanctioned for failure to admit to Request To Admit No. 10.

**Request To Admit No. 12 (Revised): Admit that the Midwest Publishing Ventures Program of the AT&T Pension Benefit Plan applied to the Plaintiff in 2008 and 2009**

**Response to Request To Admit No. 12 (Revised): Deny**

The basis for McCarthy's argument that the Defendants should be sanctioned for failure to admit to Request To Admit No. 12 (Revised) is that this statement was admitted by Defendants' Rule 30 (b)(6) designee Rhonda Stone in her deposition on May 11, 2012. The

Defendants respond that the denial is accurate.

On May 27, 2011, the Defendants responded to McCarthy's initial Request To Admit No. 12. Their response was:

> Defendants object to this request to admit on the grounds that the phrase "Midwest Publishing Ventures Program of the AT&T Pension Benefit Plan" is vague and ambiguous. Subject to, and without waiving any objections, Defendants admit that the "AT&T Pension Benefit Plan - Midwest Program" applied to Plaintiff through May 7, 2009. See document Bates AT&T 04882-AT7T 04883

At her deposition on May 11, 2012, Rhonda Stone testified that there was a difference between the Midwest Program and the Midwest Publishing Ventures Program. (Deposition of Rhonda Stone ("Stone Dep.") 10-11 May 11, 2012.) She testified that the Midwest Publishing Ventures Program ended as of December 1993 so there was no current participation at the time of McCarthy's termination from employment. (Id.) However, McCarthy had an accrued benefit under the Midwest Publishing Ventures Program. (Id.) Yet, McCarthy's retirement was subject to the rules of the Midwest Program. (Id.) Finally, Stone testified that she concluded that McCarthy did not meet the service pension requirements of the Midwest Program as of the summer of 2008. (Id. at 12.)

The Defendants admitted that the Midwest Program applied to McCarthy through May 7, 2009. Further, Stone testified that the Midwest Publishing Ventures Program ended in 1993 so McCarthy could not have been a current participant in 2008 and 2009. Thus, McCarthy has not shown that the Midwest Publishing Ventures Program of the AT&T Pension Benefit Plan applied to her in 2008 and 2009. Therefore, the Defendants cannot be sanctioned at this time for failure to admit to something which has not been shown to be true.

**Request To Admit No. 14 (Revised): Admit that in 2009, Angela Saylor was initially**

**selected to be terminated due to a surplus impacting the Staff Associate IIIs in the Dayton, Ohio office**

**Response to Request To Admit No. 14 (Revised): Deny**

The basis for McCarthy's argument that the Defendants should be sanctioned for failure to admit to Request To Admit No. 14 (Revised) is that this statement was admitted by Evans in his deposition testimony. The Defendants respond that McCarthy's argument is based upon the deposition testimony of someone not in a position to know, and the Request To Admit No. 14 (Revised) is not accurate.

On May 27, 2011, the Defendants responded to the original Request To Admit No. 14. The response was:

> Defendants object to this request to admit on the grounds that the phrase "initially selected to be terminated due to a surplus impacting the Staff Associate IIIs in Dayton, Ohio office" is vague and ambiguous. Subject to, and without waiving any objections, Defendants admit that on October 13, 2009, Ms. Saylor received notification of Surplus due to Seniority. See document Bates AT&T 04884

In this case, positions were identified for surplus and then individuals who held the positions were terminated based solely upon seniority.[2] (Winkler Dep. at 19-20; CBA, Art. 27, Force Adjustment.) The CBA does not provide for individual employees to be selected for surplus. (CBA, Art. 27, Force Adjustment.) Thus, Angela Saylor could not have initially been selected to be terminated.

As for Evans' deposition testimony, he was not Angela Saylor's supervisor, was not a human resources or labor relations representative and was not involved in determining how to

---

[2]Gary Winkler was designated pursuant to Rule 30(b)(6) to testify on Defendants' behalf as to the procedure used to determine which Ameritech employees in the Dayton, Ohio office would be surplused as part of the 2008 Midwest Force Disposition and the force adjustment surplus in 2009. (Winkler Dep. 4-5.)

implement the reduction in force or interpret the CBA provisions governing workforce reductions. Thus, his response on this issue can be given little credit, particularly when the experts on this issue testified otherwise.

The Defendants had good reason to deny Request To Admit No. 14 (Revised), and they had earlier provided a more detailed and accurate response. Further, Evans was not in a position to speak accurately to this issue. Therefore, the Court will not sanction the Defendants for failing to admit to Request To Admit No. 14 (Revised).

> **Request To Admit No. 15 (Revised): Admit that in 2009 Angela Saylor was permitted to avoid termination by taking a Staff Associate III position on the sales side, which had been held by an individual with less seniority than Ms. Saylor**

> **Response to Request To Admit No. 15 (Revised): Deny**

Once again, McCarthy's basis for seeking sanctions for Defendants' denial of this Request To Admit (Revised) is testimony by David Evans. When asked if it was true that in 2009 Angela Saylor was permitted to avoid termination by taking a Staff Associate III position on the Sales side which had been held by an individual with less seniority than Saylor, Evans responded, "True." (Evans Dep. at 146.)

The Defendants respond that their response to the original Request To Admit No. 15 provided an accurate explanation of how Angela Saylor became a Staff Associate III in the Sales group and they denied the Revised Request To Admit No. 15 because it was inaccurate. It was inaccurate, according to the Defendants, because it does not reflect the process by which Angela Saylor became a Staff Associate III in the Dayton, Ohio Sales group. Finally, the Defendants argue that Evans was not in a position to know about this issue, and they had reasonable grounds to believe that they might prevail.

On April 27, 2011, the Defendants responded to the original Request To Admit No. 15. Their response was:

> Defendants object to this request to admit on the grounds that the phrase "was permitted to avoid termination" is vague and ambiguous. Subject to, and without waiving any objections, Defendants admit that because of her seniority, Angela Saylor was moved into a Staff Associate III position in the Sales group in the Dayton Office.

Angela Saylor was moved from the Publishing group to the Sales group based upon the required application of the language in the CBA. Thus, the terminology "permitted to avoid termination by taking" is not quite accurate. The Defendants admission that Angela Saylor was moved to the Sales group because of her seniority appears to be accurate.

Also, as more fully explained above, Evans was not in a position to speak with authority on this issue, particularly since the Defendants provided a Rule 30(b)(6) witness who was able to speak with authority on this issue. Thus, reliance upon Evans' testimony appears to be misplaced. Therefore, the Defendants will not be sanctioned for failure to admit to Request To Admit No. 15 (Revised).

## CONCLUSION

McCarthy's Motion for Sanctions (doc. #38) is GRANTED IN PART and OVERRULED IN PART. The Defendants will not be sanctioned at this time for failure to admit to five of the six Requests To Admit identified by McCarthy. However, the Defendants are sanctioned for failing to admit to Request To Admit No. 10.

McCarthy is given until not later than thirty (30) days following entry of this order to move for her reasonable attorneys' fees and expenses incurred in making the proof that she would have been eligible to receive retirement health benefits if her employment had terminated

in August of 2008. This Court uses the lodestar method to determine the amount of attorneys'

fees and expenses. Finally, the Motion, if made, will be briefed in accordance with the timelines

set forth in this Court's Local Rules.

      **DONE** and **ORDERED** in Dayton, Ohio this Fifth Day of July, 2012.

                    **s/Thomas M. Rose**

                  _____

                    THOMAS M. ROSE
                 UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record